STATE ex Rel. SPARLING, Relator, *v.* HITSMAN, County
Treasurer, Respondent.

(No. 7,430.)

(Submitted April 15, 1935.   Decided May 2, 1935.)

[44 Pac. (2d) 747.]

522

*Messrs. Booth & Booth, Mr. S. C. Ford,* and *Mr. Howard Toole,* for Relator, submitted a brief; *Mr. Edwin S. Booth* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. Enor K. Matson,* Assistant Attorney General, for Respondent, submitted an original and a reply brief; *Mr. Matson* argued the cause orally.

*Messrs. Logan & Child, Amici Curiae,* submitted a brief.

MR. JUSTICE STEWART, delivered the opinion of the court.

Application for a writ of mandate. This is an original proceeding brought by J. T. Sparling, a taxpayer of Daniels county, in his own behalf and in the interest and for the benefit of other citizens, against the county treasurer of that county.

The proceeding involves the constitutionality of an Act of the Twenty-Fourth Legislative Assembly, recently adjourned.

The legislation in question is Chapter 88 of the Laws of 1935. The essential part of the Act reads as follows: "Section 1. That from and after the passage and approval of this Act, any person having an interest in real estate heretofore sold for taxes to any county, or which has been struck off to such county when the property was offered for sale and no assignment of the certificate of such sale has been made by the county commissioners of the county making such sale, shall be permitted to redeem the same by paying the original tax due thereon, and without the payment of any penalty or interest thereon. Such redemption of real estate must be made on or before the first day of December, 1935, and if such redemption is not made by the first day of December, 1935, then redemption can only be made by payment of the original tax with accrued interest, penalties and costs as now provided by law. This Act shall not apply to the purchaser of any certificate of sale made prior to the passage and approval of this Act."

The enacting provisions of the chapter are preceded by a lengthy preamble, setting forth the existence of adverse financial conditions in the state of Montana, and declaring a state of emergency such as in the opinion of the legislature constitutes grounds for the exercise of the police power of the state. The conclusion of the preamble is to the effect that an emergency exists, and that as a result thereof it is necessary for the legislature to provide a temporary method for the collection of delinquent taxes.

The relator, Sparling, is the owner of real estate in Daniels county upon which the taxes have become delinquent. He tendered to the county treasurer the amount of such taxes without penalty or interest, and attempted to avail himself of the provisions of the Act. The county treasurer, acting under the advice of the Attorney General, refused to accept the amounts, and this proceeding is to compel him to do so.

It is the view of the Attorney General that the Act contravenes and violates several provisions of the Constitution of the

state of Montana, and at least one provision of the Constitution of the United States. The most important provision of the Constitution of the state asserted against the legality of the provisions of the chapter is to be found in section 39 of Article V thereof. That section reads as follows: "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury."

Before we consider the objections raised under this section, it is important to review somewhat the history of similar legislation in this state. Upon two previous occasions the Legislative Assembly of Montana has attempted to reach the same objective sought under Chapter 88. In 1923, the Eighteenth Legislative Session enacted Chapter 63 of that session. That Act was a straight legislative enactment without any mention or finding of an emergency. The general purpose of it, however, was identical with the purpose of the present Act. The matter came before this court in the case of *Sanderson* v. *Bateman*, 78 Mont. 235, 253 Pac. 1100. The court held that the Act transgressed section 39 of Article V of the Constitution, and was therefore invalid.

In 1933, the Twenty-Third Legislative Assembly passed an Act which afterwards became Chapter 41 of the Laws of 1933. That Act was of the same tenor and import. It was challenged in this court in the case of *State ex rel. Kain* v. *Fischl*, 94 Mont. 92, 20 Pac. (2d) 1057, and upon the authority of *Sanderson* v. *Bateman,* supra, it was likewise held to be unconstitutional and inoperative. That Act, while it did not recite specific grounds of emergency, did declare the existence of an extraordinary emergency.

It is obvious that the first consideration confronted in the present case has to do with the two previous Acts and the holdings of this court with relation thereto. It is insisted that by reason of the rule of *stare decisis* this court is bound by its

former decisions and is not at liberty to construe the principles involved in any manner other than declared in the cases of *Sanderson* v. *Bateman,* and *State ex rel. Kain* v. *Fischl,* supra.

We realize the force and the wisdom of the rule of *stare decisis.* We are not unmindful of the fact that principles of law should be positively and definitely settled in order that courts, lawyers, and, above all, citizens may have some assurance that important legal principles involving their highest interests shall not be changed from day to day, with the resultant disorders that of necessity must accrue from such changes. We are mindful, however, of the fact, as stated by Mr. Justice Brandeis in a dissenting opinion in the case of *Di Santo* v. *Commonwealth of Pennsylvania,* 273 U. S. 34, 47 Sup. Ct. 267, 270, 71 L. Ed. 524, that in "the search for truth through the slow process of inclusion and exclusion, involving trial and error, it behooves us to reject, as guides, the decisions upon such questions which prove to have been mistaken." The rule of *stare decisis* will not prevail where it is demonstrably made to appear that the construction placed upon the constitutional provision in the former decision is manifestly wrong. (*State ex rel. Kain* v. *Fischl,* supra.)

We are impressed by the fact that in this instance the prior decisions do not relate to titles or involve vested rights, and do not establish rules of trade, property or contract, etc., and that as a result thereof we should not feel estopped to overrule the previous decisions and recognize what in the light of new events and more recent judicial pronouncements appears to us to be a correct principle. See the following authorities: Moschzisker on Stare Decisis, p. 1 et seq.; 15 C. J. 946, and cases cited; *Collie* v. *Franklin County Commrs.,* 145 N. C. 170, 59 S. E. 44; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759.

At the time the case of *Sanderson* v. *Bateman,* supra, was decided, the courts had not been generally called upon to construe such Emergency Acts, and authority sufficient to constitute guiding lights was not abundant or of apparent controlling influence. Even in the year 1933, when the case of

*State ex rel. Kain* v. *Fischl*, supra, was decided, the principle had not been so generally considered by courts as to point a general trend or a fixed policy in the matter of judicial determination. In the latter case, opinions were relied upon, and cited as authority, from jurisdictions which have later, upon further consideration, announced different views.

Concretely, the opinions in the cases of *Sanderson* v. *Bateman* and *State ex rel. Kain* v. *Fischl,* supra, held that taxes levied became a liability of the state against the taxpayer under the provisions of section 39 of Article V of our Constitution; that penalties and interest imposed upon delinquents, when accrued, became a part of that liability; that any attempt by the Legislative Assembly to reduce or remit the penalties and interest came within the inhibition of the section; and that it was beyond the power of the Legislative Assembly to in anywise authorize diminution of such liability.

As we view this case, it is not necessary to decide whether the legislature can, by reason of an emergency alone, legalize a proposition otherwise beyond its power. We may bear in mind, however, the principle declared by the United States Supreme Court in the case of *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 54 Sup. Ct. 231, 235, 78 L. Ed. 413, 88 A. L. R. 1481, wherein it was said: "While emergency does not create power, emergency may furnish the occasion for the exercise of power. 'Although an emergency may not call into life a power which has never lived, nevertheless emergency may afford a reason for the exertion of a living power already enjoyed.'"

While we do not feel justified in overruling previous holdings of this court merely because of the asserted and established emergency, we shall attempt to demonstrate the proper rule as applicable to the statute under consideration, regardless of the previous decisions of this court.

In this matter we are seriously influenced by a well-established and uniform rule of this court. In the recent case of *O'Connell* v. *State Board of Equalization,* 95 Mont. 91, 25 Pac. (2d) 114, 117, it was said: "This court has long indulged

every possible presumption in favor of the constitutionality of a legislative Act." In the same opinion the following very forceful language of Judge Cooley was quoted: "In case of a statute assailed as unconstitutional we stand committed to the rule that no such enactment will be pronounced invalid unless its nullity is made manifest beyond a reasonable doubt." With these principles in mind we have approached the issues of this case in an endeavor to be right, regardless of former decisions or previously conceived ideas on the subject.

In order to understand the principle involved we must have ██ in mind the fact that a tax is a liability created by statute. (*Board of County Commrs.* v. *Story*, 26 Mont. 517, 69 Pac. 56.) It follows that if the tax is a liability, the Legislative Assembly is forbidden to remit, reduce or postpone the same under the inhibition of section 39 of Article V, supra. It then becomes important to consider and decide whether the statutory penalties and interest imposed on a delinquent taxpayer by the laws of this state are to be considered as a part of the tax itself. The cases of *Sanderson* v. *Bateman* and *State ex rel. Kain* v. *Fischl*, supra, held that the penalties and interest were a part of the tax obligation. With that theory we do not now agree.

The first question for decision must be as to interest. What is the interest in such a case? The courts in the more recent decisions have pretty generally held that interest on delinquent taxes is in effect penalty. The supreme court of Oregon, in the case of *Livesay* v. *DeArmond*, 131 Or. 563, 569, 284 Pac. 166, 168, 68 A. L. R. 422, discussed this matter at considerable length, and declared that there is a distinct difference between a tax and any sum exacted by law for the failure promptly to pay; and that while such exactions are often termed "interest," yet the reasons which support them are unlike those upon which ordinary interest charges are founded. The opinion quotes from a former decision of the same court (*Colby* v. *Medford*, 85 Or. 485, 167 Pac. 487), as follows: "In passing, it may be noted that when interest is charged on a delinquent tax, it is not regarded as interest in the sense that it is a con-

sideration for the forbearance of money, but it is deemed to be a penalty; and when interest, so called, is charged, it is sustained on the theory that it is a means to insure prompt payment of the tax, and it is not a part of the tax." Other authorities to this effect are as follows: *State ex rel. First Thought Gold Mines* v. *Superior Court*, 93 Wash. 433, 161 Pac. 77; 3 Cooley on Taxation, sec. 1274; *Biles* v. *Robey*, (Ariz.) 30 Pac. (2d) 841; *State* v. *Koeln*, 332 Mo. 1229, 61 S. W. (2d) 750; *Henry* v. *McKay*, 164 Wash. 526, 3 Pac. (2d) 145, 77 A. L. R. 1025; *Islais Co.* v. *Matheson*, (Cal. App.) 35 Pac. (2d) 1051, 1054.

Having decided that interest charged against delinquent taxes is in fact a part of the penalty, we then proceed to the question of the nature of such a penalty. This court has defined "penalty" as follows: "A penalty is a sum of money which the law exacts the payment of by way of punishment for doing some act which is prohibited, or the omission to do some act which is required to be done." (*Shubat* v. *Glacier County*, 93 Mont. 160, 18 Pac. (2d) 614, 615.) Interest charged on the penalty is illegal. (*Glacier County* v. *Halvorson M. Co.*, 93 Mont. 520, 19 Pac. (2d) 648.) Can the penalty be considered as a part of the tax obligation? Are penalties within the contemplation of section 39, Article V of the Constitution?

We find ourselves in agreement with the principle announced by the California court in the late case of *Islais Co.* v. *Matheson,* supra. There it was said: "The imposition of the original severe penalties was simply an incident of the power of sovereignty. In the exercise of the taxing power the imposition of a penalty is not for the purpose of enhancing the state but for punishing the taxpayer for nonpayment * * * and the threat of such penalty is used as a means of inducing property owners to promptly pay the amount due. * * * A penalty is not part of a tax proper and is therefore subject to legislative control. * * * The right, therefore, to impose penalties or other coercive measures in order to induce prompt payment of taxes or assessments being an incident of

sovereignty, the right reserved to the state to change the measures must be read into every contract which is dependent upon the payment of the tax or assessment." For the support of this principle there is very substantial and general authority.

In the California case just cited, supra, the nature of the penalty was discussed, and the effect of an emergency recognized. There it was said: "The present statute regulating penalties was enacted pursuant to the police power of this state, and therefore such enactment fixing the penalties is paramount to any contractual rights. A fundamental part of this power is the right of the state in times of financial stress or grave or unusual economic conditions to protect the general welfare. The police power which preserves such welfare may be called into being to protect individuals from the payment of excessive penalties or assessments in an economic emergency."

The assertion of the last-quoted principle recognizes the same principle announced by the United States Supreme Court in the *Blaisdell Case,* supra, wherein it was said that emergency does not create power, but may furnish the occasion for the exercise of power.

We therefore hold that the penalties, which include interest, are no part of the tax, and therefore are not a part of the obligation; and that the remission, reduction or postponement of such penalties does not impinge upon the provisions of section 39 of Article V of the Montana Constitution. In making this declaration we feel that we are in harmony with the better judicial thought of the day. It will be observed that the courts of Texas (*Jones* v. *Williams,* 121 Tex. 94, 45 S. W. (2d) 130, 79 A. L. R. 983), Washington (*Henry* v. *McKay,* 164 Wash. 526, 3 Pac. (2d) 145, 77 A. L. R. 1025), Oregon (*Livesay* v. *DeArmond,* 131 Or. 563, 569, 284 Pac. 166, 68 A. L. R. 422), Arizona (*Biles* v. *Robey,* (Ariz.) 30 Pac. (2d) 841, 845), California (*Islais Co. v. Matheson,* supra), Missouri (*State* v. *Koeln,* 332 Mo. 1229, 61 S. W. (2d) 750; *State ex rel. McKittrick* v. *Bair,* 333 Mo. 1, 63 S. W. (2d) 64), and Kentucky (*Grieb* v. *National Bank of Kentucky's Receiver,* 252 Ky.

530

753, 68 S. W. (2d) 21), have recognized this principle, although the decisions are not all from states having a constitutional provision like the one found in our Constitution here under consideration. It is important to note, however, that the states of Texas, Kentucky and Missouri have constitutional provisions substantially similar to our section 39 of Article V, and in the other states there are constitutional provisions of similar import. The same principle was recognized by the supreme court of Oklahoma, in the case of *Holliman* v. *Cole*, 168 Okl. 473, 34 Pac. (2d) 597, which involved an order of the Governor of that state directed toward relief of taxpayers from such penalties. In addition to the authorities cited above, see, also, 61 C. J. 1493, and cases cited.

It follows that whatever was said to the contrary in the cases of *Sanderson* v. *Bateman* and *State ex rel. Kain* v. *Fischl*, supra, must be considered as overruled.

It is contended that Chapter 88 violates the provisions of the Fourteenth Amendment of the Federal Constitution, and section 11 of Article XII of our Constitution, which declares that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." In support of this contention reliance is placed principally upon the case of *State ex rel. Kain* v. *Fischl*, supra, wherein this court held that Chapter 41, Laws of 1933 (almost identical to Chapter 88), contravened the provisions of the Fourteenth Amendment, as well as section 11, Article XII, of our own Constitution, in that it was discriminatory and denied equal protection of the laws.

As we have already pointed out, the decisions of this court in the cases of *Sanderson* v. *Bateman*, and *State ex rel. Kain* v. *Fischl*, supra, were erroneous in holding that penalty and interest imposed upon delinquent taxes were a part of the tax proper, and as such constituted an obligation or liability within the meaning of section 39, Article V, of our Constitution. The reasons and authorities upon which we base our conclusion to that effect are likewise persuasive upon the proposition that the decision in the *Fischl Case* was erroneous in holding

that the act in question violated the Fourteenth Amendment, and section 11, Article XII, of the Montana Constitution. In so holding, the court manifestly based its conclusion upon the wrong premise that the penalty and interest were a part of the tax proper. It also follows that what was said in the *Fischl Case*, with reference to a violation of the Fourteenth Amendment, and section 11, Article XII, of our Constitution, is not controlling in the instant case.

In many of the cases to which we have already adverted, as well as numerous other cases wherein statutes similar to Chapter 88 were considered, it was held that there was no violation of the Fourteenth Amendment or of state constitutional provisions similar to section 11, Article XII, requiring a uniformity of taxes upon subjects of the same class. (See *Biles* v. *Robey,* supra; *State* v. *Koeln,* supra, *Henry* v. *McKay,* supra; *Livesay* v. *DeArmond,* supra; *Islais Co.* v. *Matheson,* supra; *Norris* v. *Montezuma Valley Irr. Dist.,* (C. C. A.) 248 Fed. 369; see, also, 61 C. J. 104.) This result is founded upon the proposition that constitutional requirements that all taxes be levied and collected under general laws operating uniformly throughout the state, are restricted to measures seeking to raise revenue, and have no application to burdens which are not, properly speaking, taxes. (*State* v. *Koeln,* supra.) After all, the charge of lack of uniformity must fall in the face of the fact that penalties and interest are not part of the tax itself. The penalties, including interest upon delinquent taxes, are not created by the levy of the tax. They are not constitutionally imposed. They are statutory. Therefore, such impositions are subject to remission by the legislature. Accordingly, we hold here that Chapter 88 does not contravene the Fourteenth Amendment, nor section 11, Article XII, supra, notwithstanding the decision in the *Fischl Case* to the contrary.

It is contended that Chapter 88 violates section 26 of Article V of our Constitution, the pertinent part of which reads as follows: "The legislative assembly shall not pass local or special laws in any of the following enumerated cases: * * *

extending the time for the collection of taxes, \* \* \* remitting fines, penalties or forfeitures," etc.

If the Act in question could be said to be a special statute, then certainly the above constitutional provision would be applicable and persuasive. We are unable, however, to agree with the assertion that this is a special statute. In the case of *State ex rel. Redman* v. *Meyers*, 65 Mont. 124, 210 Pac. 1064, 1065, this court defined a "special statute" as follows: "A special statute is one which relates to particular persons or things of a class (*In re Church*, 92 N. Y. 1), or one made for individual cases and for less than a class (*Guthrie Daily Leader* v. *Cameron*, 3 Okl. 677, 41 Pac. 635), or one which relates and applies to particular members of a class, either particularized by the express terms of the Act or separated by any method of selection from the whole class to which the law might, but for such limitation, be applicable. (*State* v. *Cooley*, 56 Minn. 540, 58 N. W. 150.)" (See, also, *State ex rel. Roundup Coal Min. Co.* v. *Industrial Accident Board*, 94 Mont. 386, 23 Pac. (2d) 253; *Arps* v. *State Highway Commission*, 90 Mont. 152, 300 Pac. 549; *State ex rel. Powell* v. *State Bank of Moore*, 90 Mont. 539, 4 Pac. (2d) 717, 80 A. L. R. 1494; compare *State* v. *Healow*, 98 Mont. 177, 38 Pac. (2d) 285.)

The prohibition of section 26 of Article V does not extend to a reasonable classification of persons or corporations. (*State ex rel. Powell* v. *State Bank of Moore*, supra. A law which operates in the same manner upon all persons in like circumstances is not local or special in the constitutional sense. (*Arps* v. *State Highway Commission*, supra.) We are of the opinion that Chapter 88 imposes a reasonable classification, and that it operates uniformly upon all persons in like circumstances. It is a general, and not a special, law within the meaning of the constitutional provision to which we have referred.

The constitutional provision relating to the remission of fines and penalties is, in our opinion, directed against the enactment of special laws to effect that result. General laws ▓ upon the subject are not prohibited. It must not be

forgotten that "a state legislature is not acting under enumerated or granted powers but rather under inherent powers restricted only by the provisions of the sovereign Constitution. In the matter of legislation the people through the legislature have plenary power, except in so far as inhibited by the Constitution." (*O'Connell* v. *State Board of Equalization*, 95 Mont. 91, 25 Pac. (2d) 114, 116; see, also, *Hilger* v. *Moore*, 56 Mont. 146, 182 Pac. 477; *Biles* v. *Robey*, supra; *State* v. *Koeln*, supra.) The Act being a general one, we find nothing in our Constitution to render it inoperative or illegal.

It is suggested that the chapter impairs the obligation of ▮ contracts, in violation of section 11, Article III, of the state Constitution, as well as the Federal Constitution. (Art. I, sec. 10.) This position is not tenable in view of the foregoing discussion wherein we have held that interest is penalty, and that penalty is not an obligation or liability within the contemplation of section 39, Article V, of our Constitution. (See *Henry* v. *McKay*, supra; *Islais Co.* v. *Matheson*, supra.)

Neither is there any merit in the assertion that the chapter violates section 13, Article XV, and section 1, Article XII, of our Constitution. The principles and conclusions which we have above announced, and the authorities which we have heretofore adverted to, foreclose any question concerning the validity of the Act under these particular provisions of the Constitution. The same is true with respect to the suggestion advanced to the effect that the chapter is a transgression upon section 1 of Article XIII of the Constitution.

After a careful consideration, we are convinced that Chapter 88 does not violate any of the constitutional provisions to which our attention has been directed. Let a permanent writ issue.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.