## BIG BEND DRAINAGE DISTRICT v. STATE

(No. 1986; September 10, 1936; 60 Pac. (2d) 815)

The cause was submitted for the petitioner on the brief of *F. B. Sheldon, Jr.*, of Riverton.

The cause was submitted for the objector on the brief of *Ray E. Lee,* Attorney General; *Thos. F. Shea,* Deputy Attorney General, and *William C. Snow,* Assistant Attorney General, all of Cheyenne.

TIDBALL, District Judge.

This matter is here from the District Court of Fremont County, upon the following reserved constitutional question:

"Would the authorization by the District Court of a sale of land purchased by a drainage district for delinquent annual assessments, for an amount less than the amount of the accrued unpaid annual assessments against the same, as provided by Section 122-866, W. R. S. 1931, be unconstitutional and prohibited by Section 40 of Article III of the Constitution of the State of Wyoming, when the bonds of said district are owned by the State of Wyoming through the investment of the permanent funds of the State therein, even though the sale price equals the fair value of the land and is sufficient to pay in full that portion of the delinquent annual assessments levied by the district to pay the principal and interest due on the bonded debt, but not the accrued statutory interest thereon?"

The constitutional provision referred to reads as follows:

"No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislature; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury."

Section 122-866, referred to above, is a part of Article 8-9 of the Revised Statutes of Wyoming, 1931, relating to drainage districts, and provides, in substance, that the revenue laws of the state for the collection of taxes on real estate for county purposes, except as therein modified, shall be applicable for the purposes of this article, including the payment of interest and enforcement of penalties and forfeitures for delinquent taxes. It then provides that all penalties and interest on assessments of a drainage district collected by the county treasurer shall be the property of said district, and that all penalties and interest collected on assessments of such district levied for purposes other than bonded indebtedness shall be paid to the treasurer of the district. It then provides that the county treasurer of the county in which any portion

of the land of a drainage district is located shall, at the time of advertising real property for sale for state and county taxes, include in such advertisement in a separate column the amount of delinquent drainage assessment against each lot, tract or easement of land, and that the county treasurer shall, at the time of the sale for delinquent taxes, sell the said land for delinquent drainage district assessments, and that in case no purchaser appears to purchase the land offered for sale for delinquent drainage assessments, the treasurer shall make the entry on the delinquent tax roll, "Sold to_____Drainage District of_____County, Wyoming," and shall issue a certificate of purchase to said district. It then provides that the owner of such land sold shall have eighteen months from the date of sale to redeem the same by paying therefor the amount for which the land was sold by the county treasurer, together with penalties and interest, and, in case such owner fails to redeem the paid land within that time, the county treasurer shall issue a deed therefor to the purchaser at said sale, and that the drainage district that has purchased said land at said sale shall have all the right of natural persons in regard to owning, holding and selling the certificate, and including the receipt of a deed, holding the title to real estate and selling and disposing of the same.

Then comes that part of the section that is particularly pertinent to the question here, which reads as follows:

"The commissioners shall in no case sell said land or certificate of purchase for an amount less than the amount for which said land was sold to said district, including interest thereon, unless authorized so to do by the court."

The court referred to in the above quotation is the district court having jurisdiction over the drainage district.

Article 8-9 of Chapter 122, being the drainage district law of this state, provides in substance for the organization of a drainage district to include such lands therein as will be benefitted by the drainage thereof; it provides for the appointment by the district court of commissioners to conduct the affairs of the drainage district upon its organization and thereafter for their election by those within the district; it authorizes the issuance of bonds to raise money for the construction of the drainage system, and authorizes the commissioners to levy assessments against the lands within the district in proportion to the benefits accruing to such lands for the repayment of such bonds and interest due thereon and also for the maintenance and upkeep of the drainage system.

In the case of Big Bend Drainage District, bonds were issued for the construction of the drainage system and sold to the State of Wyoming, pursuant to Section 122-877. This section provides for the issuance and sale of such bonds, and provides that such bonds shall not be held to make the commissioners personally liable, but shall be held to be the lawful indebtedness of the district, and shall constitute a lien upon the assessments for the repayment of principal and interest of such notes or bonds.

We cannot see that the sale of the land owned by the district and which it has bought in on account of delinquent assessments would in any way impair the obligation of the district on the bonds, whatever value the obligation may possess. There is no proposition involved here that the district should be released in any manner from the obligation fixed by the statute and by the bonds. The constitutional provision in question here refers, of course, to an obligation which the state actually has, whatever the limitations thereof may be. It is merely a question as to whether lands on which the State of Wyoming has a lien by way of

having a lien on the assessments levied upon the lands can be sold for their fair value and the proceeds applied to the obligation due the state.

The petition which was filed in the district court by the Big Bend Drainage District under Section 122-866 for the sale of the land involved in this case discloses that the assessed benefits against the land in question amounts to the sum of $22,250.00, and that the total construction charge against the same amounts to the sum of $6,452.60, and that the annual assessments levied against such property for the years 1927 to 1934, inclusive, are delinquent and unpaid, and amount in all to $2,871.78, not including the interest imposed thereon under the statute because of the delinquency of the assessments.

The land was sold by the county treasurer of Fremont County on July 12, 1929, for delinquent assessments for the year 1928, and bought in by the county treasurer for and on behalf of the district. The owner of the land failed to redeem the property, and on June 15, 1931, a deed for the property was issued to the district, and since that time it has stood on the records in the name of the Big Bend Drainage District. It appears from the petition that the commissioners of the district have an opportunity to dispose of this land at private sale for the sum of $2,025. The purchaser will assume and pay the original construction charge, amounting to $6,452.50, as it matures.

Of the total sum of $2,871.78 now delinquent, the sum of $1,527.16 was levied for the purpose of paying the accrued principal and interest on the bonded indebtedness, and is the sum in which the State of Wyoming is interested.

While the State of Wyoming was not made a party to the proceedings in the beginning, nevertheless the attorney general of the state was notified of the hear-

ing on the petition of the drainage district and appeared therein and filed objections to the granting of the petition upon the ground that the amount of the assessments mentioned in said petition, together with interest thereon, constitute obligations due the State of Wyoming which the said Big Bend Drainage District is asking to have satisfied and released and discharged without the payment of the full amount thereof into the proper treasury, as is required by the laws and the Constitution of the State of Wyoming, and particularly as is required by Section 40 of Article III of the Constitution of the State of Wyoming. To this objection the drainage district filed a demurrer, and thereupon the constitutional question was certified to this court.

After carefully considering the question raised by the attorney general, we are of the opinion that the constitutional provision quoted does not prevent the sale of the land under the conditions stated in the question submitted to this court—that is to say, that the sale price equals the fair value of the land and is sufficient to pay in full that portion of the delinquent assessments levied by the district to pay the principal and interest due on the bonded debt but not the accrued statutory interest thereon. We assume that the term "accrued statutory interest thereon" means the penalty levied on account of the delinquency in making the payments as they fell due. There is nothing in the constitutional provision quoted which prevents property on which the state has a lien from being sold for the purpose of satisfying that lien, and we do not believe it was the intention of the makers of the Constitution that property on which the state holds a lien cannot be sold unless the property will bring sufficient to pay the entire obligation. If that were so, it would prevent the state from foreclosing a mortgage held by it on land within the state unless the land would sell

for the full amount of the mortgage, interest and costs. There is nothing in the constitutional provision quoted that would indicate that such was the intention of the framers of the Constitution, and if the provision were so interpreted it would lead to absurd results. It would mean that the tract of land in question could perhaps never be sold and would have to be held by the district indefinitely. The district would thereby lose all future assessments against the land and it might even result in the State of Wyoming losing its general taxes levied against the tract. If we assume that the land in question is not worth the amount of the delinquent assessments and will never be worth that amount, then the above conditions would result, and the district would be compelled to hold this piece of land indefinitely, and if it should occur that a majority of the land within the district should become delinquent in its assessments and on account of financial conditions the lands were not worth and could not be sold for enough to satisfy the bonded indebtedness, the State of Wyoming would never be able to recover any part of the bond issue. We do not think that such a strained construction should be given to the constitutional provisions, especially when there is nothing in its language that would indicate such an intention.

There are not many cases upon the subject. However, there is one case, State ex rel. Mallott v. Board of Commissioners of Cascade County, 89 Mont. 37, 296 Pac. 1, where this question was raised under a constitutional provision exactly like ours, and in that case the Supreme Court of Montana held there was nothing in the constitutional provision to prevent the sale of the land. While the Montana case refers to general taxes and not to assessments for the construction of a drainage district, we think the language of the court (89 Mont. 73, 296 P. 10) would be applicable to the question before this court. There, the court says:

"The respondents insist that the lands may not be sold for an amount less than the general taxes, else section 6 of article 12, and section 39 of article 5, of the state Constitution will be violated. These lands are not now subject to taxation because owned by the county. If they may not be sold for an amount less than that represented by general taxes, then the very purpose of the Constitution and of the statutes is rendered ineffective by keeping this property from the tax rolls of the county, and thus, in effect, exempting it from taxation."

Section 39 of Article 5 of the Constitution of Montana is identical with the quoted section from our own Constitution.

We also cite the case of River Farms Company v. Gibson, 4 Cal. App. (2d) 731, 42 P. (2d) 95, where a question somewhat similar to the one in the case at bar is discussed, and the California court holds that the constitutional provision does not prevent the sale of property for a less sum than the amounts due thereon, and does not impair the obligation of contract as to the bondholders where the land is sold for its fair market value.

While the question is not perhaps directly raised in the case at bar, it might be of benefit to refer to another Montana case, State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 P. (2d) 747, where the Supreme Court of Montana specifically overrules two former Montana Supreme Court decisions and determines that interest charged against delinquent taxes constitutes a penalty and holds that such penalties are no part of the tax and therefore are not a part of the obligation, and that the remission, reduction or postponement of such penalties by an act of the Legislature does not impinge upon the provision of Section 39 of Article 5 of the Montana Constitution, which, as above stated, is identical with the section of the Wyoming Constitution in this case. If this Montana case is to be followed, and

it appears to be supported by many authorities, we think that would constitute further reason why the mere fact that the land in question would not bring enough to pay the statutory penalty would not prevent its sale, for, as we understand the question submitted to this court, the land is to be sold for sufficient to pay in full all delinquent annual assessments levied by the district against the land for the purpose of paying the principal and interest on the bonded indebtedness but not being sold for sufficient to pay the statutory penalty.

In deciding this case, we wish to say a few words concerning some matters we do not decide in order that the matter decided may clearly appear. As stated above, the State of Wyoming has voluntarily appeared in the case and raises no question as to due process of law of the jurisdiction of the court over the person of the bondholders. In this case, we are not passing upon what notice is necessary to be given bondholders, so as to acquire jurisdiction to order a sale. It further appears from the question presented that the land is being sold for its fair value, and we understand from the brief of the attorney general that that point is not questioned, but it is admitted that the proposed order of sale authorizes the sale at the full and fair market value of the land, and the State of Wyoming is making no objection on the ground that the full value is not being obtained, and, therefore, we are not passing upon what might be the law in case the bondholders should object to the sale on the ground that the proposed sale price is not equal to the fair value of the land.

We answer the question propounded by the district court in the negative—that is, that the constitutional provision quoted does not prevent the sale of the land in question under Article 122-866.

KIMBALL, Ch. J., and BLUME, J., concur.