STATE OF MONTANA ex rel. ROBERT F. HARDY, Respondent, v. THE STATE BOARD OF EQUALIZATION of the State of Montana et al., Appellants.

No. 9593.

Submitted December 13, 1957. Decided January 8, 1958.

319 Pac. (2d) 1061.

Forrest H. Anderson, Atty. Gen., William F. Crowley, Asst. Atty. Gen., H. O. Vralstad, Asst. Atty. Gen., Harold J. Pin-

soneault, Deputy Tax Counsel, Bd. of Eq., Helena, for appellants.

H. O. Vralstad, Sp. Asst. Atty. Gen., argued orally for appellants.

F. F. Haynes, Forsyth, for respondent.

F. F. Haynes, Forsyth, argued orally for respondent.

MR. CHIEF JUSTICE HARRISON:

This appeal is taken by the respondent State Board of Equalization from a judgment in favor of the petitioner, Robert F. Hardy, rendered by the district court of Custer County, Montana. The judgment held that section 84-4924, subd. (2), R.C.M. 1947 (before the 1955 amendment), was invalid. Invalidity of the statute was predicated upon the ground that it contravened the provisions of the Fourteenth Amendment to the United States Constitution, and the provisions of sections 20 and 27 of article III of the Montana State Constitution.

The provisions of section 84-4924, subd. (2), were as follows when this controversy arose: "If any person fails voluntarily to make a return of income or to pay a tax if one is due within sixty (60) days of the time required by or under the provisions of this Act, the tax shall be doubled and such doubled tax shall be increased by one (1) per centum for each month or fraction of a month from the time the tax was originally due to the date of payment."

The respondent, in his oral argument on this appeal, stated that the sole issue to be determined is: Did the legislature have authority to impose a penalty of one hundred percent against a delinquent taxpayer irrespective of intent, fraud or other consideration?

Although the State has appealed upon four specifications of error, we feel that ultimately they resolve themselves into the issue set out above. Both the State and Hardy in their briefs refer to the problem of whether or not the amendment to section 84-4924 in 1955 was retroactive, however, the trial

court made no holding on this question, the only reference being that such amendment "should be considered in determining the constitutionality of the original statute." Therefore the only issue before this court is as stated by respondent. Since no facts in this case are necessary for its determination a recitation thereof will be unnecessary.

The statute in the instant case comes up for review aided by the presumption that it is valid and enacted pursuant to a legitimate legislative function. Public Service Com. v. City of Helena, 52 Mont. 527, 159 Pac. 24; O'Connell v. State Board of Equalization, 95 Mont. 91, 107, 25 Pac. (2d) 114; House v. School Dist. No. 4, 120 Mont. 319, 324, 184 Pac. (2d) 285. If one relies on the invalidity of a statute he must show its invalidity beyond a reasonable doubt Graham v. State Board of Examiners, 116 Mont. 584, 155 Pac. (2d) 956; House v. School Dist. No. 4, supra.

It has been frequently recited in Montana that the power of taxation is an incident of sovereignty and inherent in the state because government cannot exist or function without it. Valley County v. Thomas, 109 Mont. 345, 97 Pac. (2d) 345. This court has expressed a strong judicial policy in upholding taxing statutes, and enforcing their provisions. Buffalo Rapids Irr. Dist. v. Colleran, 85 Mont. 466, 471, 279 Pac. 369; Commercial Credit Co. v. O'Brien, 115 Mont. 199, 215-216, 146 Pac. (2d) 637; State ex rel. Anderson v. State Board of Equalization, 133 Mont. 8, 319 Pac. (2d) 221. This court has also expressed itself in those same cases that equality of taxation is imperative so that some are not burdened with more than their fair share, thus, vigilance of taxing officials is required so that some do not escape their burden at the expense of others.

To aid taxing officials in collection of taxes, this court has recognized the importance of penalties to induce payment and facilitate collection. Shubat v. Glacier County, 93 Mont. 160, 18 Pac. (2d) 614; State ex rel. Sparling v. Hitsman, 99 Mont. 521, 44 Pac. (2d) 747, 750. In the Shubat case, 93 Mont. at

page 164, 18 Pac. (2d) at page 615, the court stated this policy in the following manner:

"The power to levy taxes includes the power to provide such means as will tend to secure prompt payment. * * *

"The 5 per cent. penalty is the incentive to pay promptly."

In State ex rel. Sparling, supra [99 Mont. 521, 44 Pac. (2d) 750], the same policy was enunciated when this court quoted approvingly from Islais Co. v. Matheson, Cal. App., 35 Pac. (2d) 1051, 1054, as follows: ' ' 'The imposition of the original severe penalties was simply an incident of the power of sovereignty. In the exercise of the taxing power the imposition of a penalty is not for the purpose of enhancing the state but for punishing the taxpayer for nonpayment * * * and the threat of such penalty is used as a means of inducing property owners to promptly pay the amount due'."

Petitioner argues, however, that granting the state has the power to impose penalties on taxpayers for failure to pay the tax, nevertheless such penalties are limited to ones which are not excessive or oppressive; if they are, then they violate the constitutional provisions set out hereafter.

Does section 84-4924, subd. (2) (before amendment), violate article III, section 20 of the Montana Constitution? Section 20 of article III reads as follows: "Excessive bail shall not be required, or excessive fines imposed, or cruel and unusual punishments inflicted."

In Daily v. Marshall, 47 Mont. 377, 399, 133 Pac. 681, 687, this court held that "A fine, in the sense in which the term is used in the Constitution [Art. III, section 20], is a penalty exacted by the state for some criminal offense. The provision of the Constitution has no application to the liability involved here."

In Shubat v. Glacier County, supra, this court stated that statutes which are designed to secure prompt payment of taxes are in the nature of penalties. However, there appears to be no direct holding on the question of whether such a penalty is a criminal or remedial sanction. It should be noted that in

subdivisions (3) and (4) of section 84-4924 the legislature has enacted explicit criminal sanctions for failure to pay the tax. However subdivision (2) is clearly only remedial.

Mr. Justice Brandeis, in Helvering v. Mitchell, 303 U.S. 391, 399, 404, 58 S. Ct. 630, 633, 82 L. Ed. 917, illustrated the difference between criminal and civil sanctions in the following manner:

"Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. The question for decision is thus whether section 293(b) [26 U.S.C.A. (I.R.C. 1939) section 293(b)] imposes a criminal sanction. * * *

"Forfeiture of goods or their value and the payment of fixed or variable sums of money are other sanctions which have been recognized as enforcible by civil proceedings since the original revenue law of 1789. * * * In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal and subject to the procedural rules governing criminal prosecutions. * * *

*"The fact that the Revenue Act of 1928 contains two separate and distinct provisions imposing sanctions, and that these appear in different parts of the statute, helps to make clear the character of that here invoked * * * we construe section 293(b) as imposing a civil administrative sanction * * *."* Emphasis supplied.

To the same effect see In re Rogers' Estate, 147 Neb. 1, 22 N.W. (2d) 297. The principles applied in Helvering v. Mitchell and In re Rogers' Estate are equally applicable to the instant statute and we find that it is civil or remedial in nature, not criminal. Being a remedial or civil sanction it does not violate the provisions of article III, section 20 of our Constitution. Daily v. Marshall, supra.

Does section 84-4924, subd. (2) (before amendment), violate the provisions of the fourteenth amendment to the United States

Constitution and the provisions of article III, section 27 of the Montana Constitution? In effect, is the one hundred percent penalty a taking of property without due process of law because it is excessive or oppressive?

It has been repeatedly held that the amount of a penalty is a matter for the legislature to determine in its discretion, Western Union Telegraph Co. v. State of Indiana, 165 U.S. 304, 310, 17 S. Ct. 345, 41 L. Ed. 725; Isbel v. Gulf Union Oil Co., 147 Tex. 6, 209 S.W. (2d) 762; Chicago, R.I. & P. Ry. Co. v. People, 217 Ill. 164, 75 N.E. 368, 371; Bankers Trust Co. v. Blodgett, 260 U.S. 647, 651, 43 S. Ct. 233, 67 L. Ed. 439; Cooley, Taxation, section 1273, page 2535, 4th Ed.; 51 Am. Jur., Taxation, section 970, page 848; 85 C.J.S. Taxation, section 1023, page 581, and will not be declared unconstitutional unless plainly oppressive or excessive in relation to the offense. Chicago & N.W. Ry. Co. v. Nye-Schneider-Fowler Co., 260 U.S. 35, 43 S. Ct. 55, 67 L. Ed. 115; Chicago, R. I. & P. Ry. v. People, supra; Gooch v. Rogers, 193 Or. 158, 238 Pac. (2d) 274; Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714; Missouri Pacific Ry. Co. v. Tucker, 230 U.S. 340, 33 S. Ct. 961, 57 L. Ed. 1507; State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 183 So. 219; 85 C.J.S., Taxation, section 1023, page 581. It has also been stated that the penalty cannot deter the penalized from resorting to the courts. Missouri Pacific Ry. Co. v. Tucker, supra; Ex parte Young, supra, Gooch v. Rogers, supra.

In Gooch v. Rogers, supra, the Oregon court upheld a statute which imposed a penalty of eighty percent of the tax. The penalty was attacked as unconstitutional on much the same grounds as petitioner here contends. The following language, found at pages 184, 185, 187 of 193 Or., at page 286 of 238 Pac. (2d) is particularly applicable to the instant question of whether the tax was oppressive:

"In determining whether or not the penalty is excessive, we may take into consideration, so we believe, the nature of the offense for which the penalty is imposed. We think it is clear

that the penalty is provided for the wrong which is done when a timber owner fails to make timely payment of the yield tax. * * * If his tardy payment was due to nothing more blameworthy than forgetfulness, he, nevertheless, is subject to the penalty. Evidently the legislature reasoned that a loss sustained by the public treasury through the nonpayment of the tax by a forgetful person is as costly as when any other person fails to pay his tax. * * *

"Penalties are graduated in severity according to the evils which the lawmaker wishes to prevent and the exigencies with which the penalty-imposing statute deals. * * *

"The care which the legislature exercised in trying to assure prompt payment of the yield tax shows that it deemed the tax an important source of the public revenue."

The Montana legislature, in adopting the penalty provided for in section 84-4924, must have deemed the income tax an important source of revenue also. The penalty although onerous was fitted to the exigencies of raising revenue from that particular source. If the penalty is too small, taxpayers will attempt to avoid it, taking so to speak, a "chance." It should also be noted that a penalty is often geared to the cost incurred by the state in collecting delinquent taxes. Large sums of money are expended by this state in enforcing our tax statutes and collecting the money lawfully due.

In Stockwell v. United States, 13 Wall. 531, 547, 551, 20 L. Ed. 491, the United States Supreme Court recognized that cost of enforcement is an element taken into consideration in determining the legality of a penalty where a provision added double the value of the goods and the court stated:

"It must therefore be considered as remedial, as providing indemnity for loss. And it is not the less so because the liability of the wrongdoer is measured by double the value of the goods received, concealed, or purchased, instead of their single value. *The act of abstracting goods* illegally imported, receiving, concealing or buying them, *interposes difficulties in the way of a government seizure, and impairs, therefore, the value*

*of the government right.* It is, then, hardly accurate to say that the only loss the government can sustain from concealing the goods liable to seizure is their single value, or to assert that the liability imposed by the statute of double the value is arbitrary, and without reference to indemnification. *Double the value may not be more than complete indemnity.* * * *

"The act of 1823 was, as we have seen, remedial in its nature. Its purpose was to secure full compensation for interference with the right of the United States."

The Supreme Court of the United States recognized that a double penalty may be constitutional in Missouri Pacific Ry. Co. v. Tucker, supra, 230 U. S. at page 348, 33 S. Ct. at page 963, where in holding certain penalties unconstitutional, they made the following observation: "It will be perceived that this liability is not proportioned to the actual damages. *It is not as if double or treble damages were allowed, as often is done, and as we think properly could have been done here.*" Emphasis supplied. In Western Union Telegraph v. State of Indiana, supra, the United States Supreme Court held a penalty of fifty percent was not excessive. Kentucky has a statute imposing a one-hundred percent penalty for failure to pay a tax the constitutionality of which does not appear to be tested, but see Davis v. Becker, 309 Ky. 775, 219 S.W. (2d) 6.

Petitioner has failed to cite a single case in which a double penalty has been declared excessive or unconstitutional.

The instant statute does not come within the rule laid down in Ex parte Young, supra, or Missouri Pacific Ry. Co. v. Tucker, supra, as barring or deterring petitioner's resort to the courts. It should be noted that if the taxpayer had understated the amount, the penalty did not necessarily apply. R.C.M. 1947, section 84-4925, subd. (3), before repeal in 1957. Nor does the taxpayer proceed to calculate his tax under a burden of ignorance as to the governing facts. As was stated in Gooch v. Rogers, 193 Or. at page 176, 238 Pac. (2d) at page 282, supra, "Therefore, when the owner pays his yield tax, he does not take a step in the dark, for there is in his

hands the fact material which enables him to calculate accurately the required amount. He will incur no penalty (a) if his report is correct; (b) if he has made no error in the simple calculation necessary to a determination of the amount of the tax; and (c) if his remittance is for the full sum shown by the report.'' In the instant case the taxpayer may avoid the penalty if his return is correct; if he has made no error in calculation, and here the harshness is alleviated by section 84-4925, subd. (3); and if his remittance for the sum shown to be due is paid in full within the time limitation provided for by statute.

Petitioner argues that the legislature recognized the oppressive and excessive nature of a double penalty when they enacted the amendment to section 84-4924 in 1955. Section 1, chapter 163, Laws of 1955. However, we do not deem such to be the case, but rather a revision of the type of penalty required to induce prompt payment. When section 84-4924 was originally enacted the legislature probably thought a double penalty was necessary, either to induce payment or cover the costs of collection, but after twenty-two years of application found such a penalty unnecessary and reduced it.

While the penalty imposed under section 84-4924, subd. (2), before amendment, was heavy, it was not unconstitutional. The case is reversed and judgment should be entered against the petitioner for the amount of the delinquent tax and penalties accruing thereto.

MR. JUSTICES CASTLES, and ADAIR and The HON. PHILIP C. DUNCAN, District Judge (sitting in place of MR. JUSTICE BOTTOMLY, because of the latter's illness), concur.

MR. JUSTICE ANGSTMAN: (dissenting)

I concede that the legislature has power to impose penalties for the failure of a taxpayer to pay his taxes in time. I concede too that the purpose of such legislation is to encourage the prompt payment of taxes and that the amount of the pen-

alty is usually to be determined by the legislature in its discretion, but the legislature may not impose unreasonable, arbitrary, excessive or oppressive penalties for to do so is a taking of property without due process of law and a denial of the equal protection of the laws. 16A C.J.S. Constitutional Law, section 549, pages 486, 488; 85 C.J.S. Taxation, section 1022, pages 577, 578, note 16.

It is a fallacious notion that section 20 of article III of the Montana Constitution, which provides: ''Excessive bail shall not be required, or excessive fines imposed, or cruel and unusual punishments inflicted.'', protects a criminal who has been convicted of a crime, but that the sky is the limit of fines or penalties that may be imposed upon one who has not been convicted of a crime. I realize that there are cases that support the majority opinion in holding that section 20 of article III is not available to one who has been punished in civil as distinguished from criminal proceedings, but I think the Supreme Court of Texas was correct when it ruled otherwise under an identical constitutional provision in State v. Galveston H. & S. A. Ry. Co., 100 Tex. 153, 97 S.W. 71, 78.

There the court held that the word ''fines'' is synonymous with ''penalties'' and condemned a statute which imposed a penalty of $200 a day for delay in paying taxes. The court calculated that the penalty for one year would amount to more than $73,000. It pointed out that as to the one railroad company, there involved, the amount of the tax was claimed to be $74,724 so that the penalty for failure to pay for one year would be nearly one hundred percent of the amount of the tax. As to the other company the tax was $1,555 and the penalty for one year would be nearly fifty times the amount of the tax. The court condemned the penalty by saying: ''The assessment of a penalty of 100 per cent. for the failure to pay a tax would seem to be sufficiently excessive to authorize a court to declare it to be excessive, but the assessment of more than 4,000 per cent. upon the amount detained can leave no possible question that the penalties are out of all proportion

to the amount of money detained, and the law must be held to be void for the penalties."

A case parallel with this is that of Stierle v. Rohmeyer, 218 Wis. 149, 159, 160, 260 N.W. 647, 651. There the statute in question provided that for failure of the mortgagee of a chattel mortgage to do certain acts the mortgagor might recover damages, a penalty of $25 and the debt secured by the mortgage shall be deemed fully satisfied. The court condemned the statute in part and said:

"The penalizing provisions of the statute are not saved by the fact that the transfer of the property is to be effected under the guise of a penalty. It was held in Mississippi before the adoption of the Fourteenth Amendment that a party could not be deprived of his property by a legislative declaration of forfeiture to the state for failure to pay the tax levied thereon, upon the general principle that this would be contrary to the fundamental principles of our state and federal governments. Griffin v. Mixon, 38 Miss. 424. The opinion quotes at pages 434, 435, of 38 Miss., from Van Horne v. Dorrance, 2 Dall. 304, 309, 1 L. Ed. 391, where it is said with reference to appropriating private property for public use by the Legislature: ' "The English history does not furnish an instance of the kind. The Parliament, with all their boasted omnipotence, never committed such an outrage on private property; and if they had, it would have served only to display the dangerous nature of unlimited authority; it would have been an exercise of power and not of right. Such an act would be a monster in legislation, and shock all mankind. The legislature, therefore, had no authority to make an act divesting one citizen of his freehold, and vesting it in another without a just compensation" (nor even with it, except for *public* use, he afterwards adds). "It is inconsistent with the principles of reason, justice, and moral rectitude; it is incompatible with the comfort, peace, and happiness of mankind. It is contrary to the principles of social alliance in every free government;

and lastly, it is contrary to both the letter and spirit of the constitution'.''

''The Supreme Court of the United States has expressly held that a statute which by its terms exacts penalties beyond the bounds of reason is unconstitutional. [Citing a great many cases.] In all of these cases, it is held that a penalty that is unreasonable in amount deprives the penalized party of his property without due process. The penalty here is clearly subject to the same condemnation as those involved in the cases cited. In the Tucker case, supra [230 U.S. 340, 33 S. Ct. 961], a penalty of $500 imposed by statute for charging a shipper a freight rate in excess of a statutory rate was held to render the penalty provision void. The opinion states: 'It will be perceived that this liability is not proportioned to the actual damages. * * * As applied to cases like the present, the imposition of $500 as liquidated damages is not only grossly out of proportion to the possible actual damages, but is so arbitrary and oppressive that its enforcement would be nothing short of the taking of property without due process of law, and therefore in contravention of the 14th Amendment'.''

The court in that case sustained that part of the statute imposing a penalty of $25 and actual damages. If that statute was bad for considering the mortgage debt paid, then so is this one that doubles the amount of the tax. No cases sustain a penalty of 100 percent for delay in the payment of taxes. Some courts go to considerable length to sustain penalties imposed for such delays and attempt to justify their action upon the ground of state necessity. But that reasoning would not apply in this state. Here all income tax obligations stand in the same category as judgments against the one owing the tax.

The State Board of Equalization is authorized to issue a warrant directed to the sheriff of any county of the state commanding him to levy upon and sell property of the person owing the tax in order to effectuate the payment thereof. R.C.M. 1947, section 84-4928. In such cases the sheriff is entitled to his fees, but they are added to the amount of the tax

due, along with penalties and interest. Penalties are added under subdivision 1 of section 84-4924 which are not questioned here.

Hence the State suffers no loss in the collection of the tax where as here the taxpayer has ample property to satisfy the demand.

In my opinion the penalty of 100 percent of the tax is outrageously excessive and bears no relationship to damages which might be sustained by the State for the delay in paying taxes.

The legislature has since reduced the penalty to 25 percent and has made it apply only to those who fail to make the return or to pay the tax "with intent to evade any tax imposed by this act." I express no opinion as to whether a 25 percent penalty is valid. Under the present statute the taxpayer would undoubtedly be privileged to show an absence of intent to evade the tax. Under the statute in effect when this tax accrued the penalty was imposed automatically and the taxpayer was not permitted to show as he offered to do that he thought the tax had been paid.

This adds to the invalidity of the act by denying to the taxpayer the opportunity to show the facts causing the delay in payment and hence is lacking in due process of law. In 3 Cooley, Taxation, 4th Ed., section 1092, page 2209, it is said: "When a statute subjects the person to penalties of any kind, to be inflicted by a ministerial officer without a hearing, for a neglect that may have been unintentional and perhaps entirely excusable, it is not clear that it is consistent with the genius of the common law, or with general principles of American jurisprudence.", and see the well reasoned majority opinion in Griffin v. Mixon, 38 Miss. 424.

I think the judgment of the trial court should be affirmed.