Argued December 16, 1919, reversed January 27, 1920.

MULKEY *v.* BENNETT, SUPERINTENDENT OF BANKS.

(186 Pac. 1115.)

**Mandamus — Pleading Conditions Precedent Necessary to Compel Issue of Charter to do Banking Business.**

1. In the absence of allegation by petitioner that the superintendent of banks has examined into the condition of a proposed bank and has ascertained the character and general fitness of the persons named as officers and stockholders, or has refused to do so, *mandamus* will not lie to compel him to grant a charter, in view of Section 4568, L. O. L., as amended by Laws of 1917, page 154, Section 2.

**Mandamus—Demurrer not Admission of Facts not Alleged.**

2. While a demurrer admits all of the allegations of an alternative writ of *mandamus,* it cannot be deemed or treated as an admission of any fact which is not alleged.

**Banks and Banking—Constitutional Law—Statute Requiring Permission to Establish Bank not Denial of Equal Protection.**

3. Section 4568, L. O. L., as amended by Laws of 1917, page 154, Section 2, relating to the issuance of charters to banks and the powers of the superintendent of banks, is not a denial of equal protection within 14th Amendment to U. S. Constitution.

**Constitutional Law—Complaint as to Constitutionality of Statute not Considered in Absence of Injury.**

4. It cannot be contended that the portion of Section 4568, L. O. L., as amended by Laws of 1917, page 154, Section 2, which reads, "and if in his opinion the organization of such bank is justified," confers upon the superintendent of banks an arbitrary power and that the same is unconstitutional, unless the person complaining has strictly complied with the provisions of such section.

From Marion: GEORGE G. BINGHAM, Judge.

Department 2.

This is a proceeding in *mandamus* to compel the defendants to issue to the plaintiffs a charter to do a banking business in the district of St. Johns, in the City of Portland.

The defendant, Mr. Olcott, is Governor and Secretary of State, and Mr. Hoff is State Treasurer; and together they constitute the state board of bank commissioners which elected the defendant, Bennett, as state superintendent of banks. It is alleged that the City of Portland has a population of 200,000; that the St. Johns district, formerly the City of St. Johns, which is now in the City of Portland, is situated more than two miles, to wit, twelve miles, from the central portion of Portland.

About March 27, 1919, the plaintiffs, acting through L. A. Bass, made a written application to defendant W. H. Bennett, as state superintendent of banks, for a priority right to organize a bank in the St. Johns district, in the City of Portland, by whom they were informed that it would be necessary to show a desire and need upon the part of residents in that section before he would grant a charter. It is then alleged:

"That the petitioners above named are citizens of the United States and residents and inhabitants of the State of Oregon, and that all save two of your petitioners are actual residents within the St. Johns district, in the City of Portland; that on or about the sixteenth day of April, 1919, petitioners associated themselves together by articles of incorporation for the purpose of establishing a state bank to do a general banking business within the City of Portland, Multnomah County, Oregon; said bank to be situated in the St. Johns district of said city upon the terms and conditions set out in said articles of incorporation, a copy of which, marked exhibit 'A,' is attached hereto, re-

ferred to and made a part hereof; that thereupon petitioners elected S. A. Mulkey, J. W. Davis and L. A. Bass, majority stockholders in said corporation, as directors thereof and thereupon subscribed in full for the full amount of the capital stock of 500 shares of the par value of $100 per share and further subscribed the sum of $5,000 for organization expenses of said corporation, a copy of said subscription list, marked petitioners' exhibit 'B,' being hereby attached, referred to and made a part hereof.

"That thereafter and on said date, petitioners filed with the defendant, Will H. Bennett, superintendent of banks, triplicates of the said articles of incorporation, a list of stockholders, showing names, addresses and number of shares subscribed by each and made written application to said defendant for a charter as a state bank to do a general banking business in St. Johns district of the City of Portland, Multnomah County, Oregon, and at the same time tendered to defendant $31 as organization and corporation fees therefor."

On April 23, 1919, the defendant Bennett, as such superintendent, refused to grant a permit and made the following indorsement on the articles of incorporation:

" * * for the reason that in my opinion the organization of such a bank in St. Johns is not justified at the present time. (Sec. 20.) There is already a national bank at this point which is the amalgamation of two national banks formerly located there, and also a state bank which expects to move from the outskirts of St. Johns into the heart of the district. The state bank, as you know, has been in the hands of this department temporarily, but has been completely reorganized and permitted to reopen."

The petitioners appealed from that decision and refusal, to the state banking board which held a hearing thereon, April 29, 1919, and on May 2, 1919, it sus-

tained the decision of Bennett, as superintendent of banks, in his refusal to grant the permit, but in its decision provided:

"That if the First Trust & Savings Bank of St. Johns hereinafter referred to had not moved into the business district of St. Johns, by July 1, 1919, an application for a charter would be considered."

The First Trust & Savings Bank was a banking corporation, formerly doing business in the St. Johns district, and it became insolvent on February 19, 1919, and for such reason was taken under control by the state superintendent of banks. The assets thereof were assigned to one Dornbecher who paid all the claims against it in full.

It is alleged that, between the date of petitioners' application for permission to organize and the date of the hearing on appeal to the state banking board, the defendant Bennett, as superintendent of banks, disregarding the rights of petitioners and the priority of their application, attempted to revive the First Trust & Savings Bank of St. Johns by means of supplementary articles of incorporation, into a new association of persons with a capital stock of $50,000, to be then removed to the business section of the St. Johns district and resume business under the corporate name of "Bank of Commerce," which was the identical name chosen by petitioners, as set forth in their application to defendant Bennett and in their articles of incorporation.

It further appears that at the hearing on the appeal, Bennett represented that the reorganized First Trust & Savings Bank and the Peninsula National Bank of St. Johns would be sufficient to care for the banking business of that district, and that the organization of

a new bank therein would be detrimental to the interests of those two banks.

It is then alleged that the act of Bennett, in his attempt to revive the First Trust & Savings Bank of St. Johns is illegal, null and of no effect, and that permission to use the old charter of that bank is in effect to establish a new bank in subversion of the priority and rights of the petitioners; that the total capital stock of the three banks would be $150,000, and that the bank deposits within the St. Johns district aggregate $1,500,000, and that the actual ratio of deposits therein is ten to one and the ratio of deposits to required capital stock that of fifteen to one. Petitioners allege that the refusal of the defendants to grant them a charter "is an abuse of discretion, partial, arbitrary, discriminatory and unjust." Plaintiffs tendered the statutory fees.

To the alternative writ the defendants filed a demurrer, upon the grounds:

First, "That the court has no jurisdiction over the subject of the action."

Second, "That said writ fails to state facts sufficient to constitute a cause of action against said defendants, or any of them."

The demurrer was overruled and judgment was entered in favor of the plaintiffs, as prayed for in their petition; and the peremptory writ was issued, from which the defendants appeal, claiming that the court erred in not sustaining the demurrer which is the only question presented.        REVERSED.

For appellants there was a brief over the names of *Mr. I. H. Van Winkle,* Assistant Attorney General, and *Mr. George M. Brown,* Attorney General, with an oral argument by *Mr. Van Winkle.*

For respondents there was a brief with oral arguments by *Mr. George Estes* and *Mr. E. M. Morton.*

JOHNS, J.—1. Section 4568, L. O. L., as amended by the General Laws of 1917, page 154, among other things provides:

"The superintendent of banks shall examine into the condition of such bank and shall ascertain from the best sources of information at his command whether the character and general fitness of the persons named as stockholders and officers are such as to command the confidence of the community in which such bank is proposed to be located. If, upon such examination, it appears that said bank is lawfully entitled to commence business and the directors and officers are competent to engage in the business of banking, and if, in his opinion, the organization of such bank is justified, he shall forthwith issue to such bank, under his hand and official seal, a charter to do banking business."

There is no allegation in the alternative writ that the superintendent of banks ever examined into the condition of the proposed bank, or that he ever ascertained from any source of information the character or general fitness of the stockholders or officers of the proposed bank, or whether either of them had the confidence of the community where it was to be located, or that their character or general fitness would entitle them to a charter. Neither is there any allegation that the plaintiffs ever requested him to make such examination and investigation, or that he ever refused to do so. Neither is there any allegation that the stockholders and officers are competent to engage in the business of banking or that the superintendent of banks was ever requested or refused to make any such finding. All of such matters are conditions precedent to the granting of a bank charter, which it was necessary for the peti-

tioners to show and allege. The rule is well stated in 26 Cyc. 435:

"To entitle petitioner to relief the petition or the alternative writ must allege the existence of all such facts as are essential elements of the right and duty sought to be enforced, and show that all things have been done which are required to be done in order to give rise to the right and duty. Accordingly if prerequisities or conditions precedent to the duty to act or to the right to demand action are imposed by statute or otherwise, it must appear that they have been fully complied with and performed, so that the court can determine that a present duty rests on respondent and that a present right to performance is vested in petitioner. And some courts have gone so far as to hold that petitioner should by his allegations anticipate objections to the issuance of the writ and negative their validity." Citing *People* v. *Glann,* 70 Ill. 232, in which it is said:

"Where a right claimed is dependent on the performance of conditions precedent, it is not sufficient to state a performance in all things generally, but the pleader should allege specially that each condition has been performed and the manner of its performance."

In 18 R. C. L., page 342, Section 294, it is said:

"Where the right to have a particular act done at the time and in the manner demanded is dependent on some other act having been done or some condition existing, in order to show affirmatively by the petition for the writ that the relator is entitled, as claimed, facts must be stated therein showing that such preliminary act has been done or condition created."

2. Plaintiffs allege that the charter was refused by the above written indorsement made on the articles of incorporation and that it was refused for the reason that, in the opinion of Mr. Bennett, another bank was not required at St. Johns under the business conditions then existing; and that such refusal was arbi-

trary and wrongful. The plaintiffs are the moving parties and it devolves upon them to allege the performance of and a compliance with every specific act provided by Section 4568, L. O. L., as amended, as conditions precedent to the granting of the writ for the refusal to grant the charter. The reason stated by the superintendent of banks is not a legal admission that the plaintiffs have complied with all or any one of such specific provisions. While the demurrer admits all of the allegations of the alternative writ, it cannot be deemed or treated as an admission of any fact which is not alleged.

3, 4. In both the lower and this court plaintiffs contended that the portion of Section 4568, which reads: "And if in his opinion the organization of such bank is justified," confers upon the superintendent of banks an arbitrary power, denies them equal rights and protection under the law, and is in conflict with Article XIV of the Constitution of the United States. The lower court sustained that contention.

This court must assume that no bank has ever been granted or will receive a charter without a full compliance with the specific provisions of Section 4568, above quoted, as to the conditions of the bank and the character and general fitness of the officers and stockholders and as to whether they are competent to engage in the business of banking. That is not class legislation and until such time as the plaintiffs allege a strict compliance with such provisions of that section of the banking law, no constitutional question is presented and they have no legal right to complain.

The demurrer is sustained, judgment reversed and the writ denied.                          REVERSED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.